Argued January 19; decided February 28, 1898.

## SCOTT *v.* WALTON.

[52 Pac. 180.]

RESCISSION OF SALE—FALSE REPRESENTATIONS.— A purchaser who actually examined land before buying, and did not rely on the seller's statements, cannot rescind because the grantor placed too high a value on it, where the statement was not a warranty or an affirmance of some specific fact.

RIGHTS OF DEFRAUDED PARTY TO CONTRACT.— A party who has been induced to enter into a contract by fraud, may upon discovering the fraud, either affirm the contract and sue for damages, or disaffirm it and be reinstated in the position in which he was before it was consummated.

DUTY OF INJURED PARTY.— One who desires to rescind a contract for fraud must act promptly and return, or offer to return, what he has received under the contract, and he cannot retain the fruits of the contract awaiting further developments to determine whether it will be more profitable to affirm or disaffirm it.

WAIVER OF RIGHT TO RESCIND.— A party to an exchange of lands waives his right to rescind for fraud of the other party where he remains in possession of the land received by him in exchange, and endeavors to dispose of it, and exercises full and complete ownership over it without making any offer to rescind for some time after the discovery of the fraud.

From Josephine: HIERO K. HANNA, Judge.

Suit by B. F. Scott against J. D. Walton and wife to compel defendants to rescind a sale, and to cancel the deed made by plaintiff to defendants. From a decree against him plaintiff appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by Messrs. *Davis Brower, T. P. Hackleman* and *L. H. Montanye.*

For respondents there was a brief and an oral argument by Messrs. *Geo. W. Colvig* and *Robert G. Smith.*

MR. JUSTICE BEAN delivered the opinion.

This is a suit to cancel a deed on the ground of fraud. The facts are that on April 15, 1893, the plaintiff traded to the defendant a farm in Josephine County and certain personal property thereon for a dwelling house and two lots in Lebanon, Linn County. The trade proceeded upon the basis that the respective properties were of equal value, but the Lebanon property was incumbered by a mortgage to secure the payment of $900, due December, 1894; and to indemnify the plaintiff against such mortgage the defendant assigned and transferred to him a promissory note of date March 8, 1893, on Wilson & Chase, for $873.24, due 22 months thereafter. On June 26, 1894, the plaintiff, becoming dissatisfied with the trade, offered to rescind the contract, and on the following day commenced this suit to cancel and set aside the conveyance from him to the defendant on the grounds (1) that defendant falsely and fraudulently represented the Lebanon property to be worth the sum of $2,500, when, in truth and in fact, it was worth no more than $1,000; (2) that he falsely and fraudulently represented that the Wilson & Chase note was as good as gold and would be paid at maturity, and was ample and sufficient to indemnify him against any loss he might sustain by reason of having to pay the $900 mortgage, when, as a matter of fact well known to defendants, such note was of no value whatever. The evidence shows that the negotiations between the parties for the exchange continued some 10 or 15 days before the trade was finally consummated; that plain-

tiff resides near Lebanon and was acquainted with the property defendant was offering to trade to him, and that he not only had a full opportunity to, but did actually, examine it before making the exchange. Under such circumstances, the mere statement of the defendant as to its value furnishes no ground for avoiding the contract. The law recognizes the well-known fact that it is characteristic of human nature for the owner, when about to sell his property, to set a high value thereon for the purpose of enhancing it in the buyer's estimation; and hence, when the parties are dealing at arm's length, it does not help a purchaser who accepts and relies upon the vendor's statements as to value, when no warranty is intended and when the language used is not an affirmation of some specific fact, but the mere expression of opinion: 1 Bigelow on Fraud, 49; Pomeroy's Equity Jurisprudence, § 878.

Upon the other branch of the case the court found in favor of the defendant, and we are of the opinion that its conclusions ought not to be disturbed. The evidence is somewhat conflicting. The plaintiff testifies that defendant represented to him that the Wilson & Chase note was good and would be paid at maturity, while the defendant says that he made no such representations or statements, but that the plaintiff relied upon his own judgment in accepting the note. The burden of proof is upon the plaintiff, and we do not think he has made out his case in that clear and satisfactory manner requisite in cases of this character, nor did he offer to rescind with sufficient promptness after discovering the alleged fraud. He

admits that he knew the circumstances under which
the Wilson & Chase note was given, and that the
consideration therefor was the purchase from defend-
ant of certain planing mill property in Lebanon, for
which he had given them a bond for a deed, condi-
tioned that he would convey the title to them upon
the payment of the purchase price. It is also admitted
that plaintiff and defendant sought out Wilson & 
Chase before the transfer of the note, and advised
them that it was going to be made, so that there was
ample opportunity given to the plaintiff to make in-
quiries about the value of the note and the financial
standing of the makers if he had desired to do so.
In October, 1893, Wilson & Chase failed in business,
and defendant was obliged to take back the mill
property, which, under the terms of the contract,
operated to cancel and annul the note given for the
purchase price. The plaintiff knew of this trans-
action at the time, and that the note had, by reason
thereof, become valueless, but took no steps to rescind
the trade, and never made any claim that he had been
defrauded until the day before this suit was begun.
On the contrary, he sent a letter to the defendant on
October 27, 1893, some days after the failure of Wilson
& Chase, in answer to a letter from him complaining
about some alleged misrepresentions of plaintiff con-
cerning the Josephine County farm, in which the fol-
lowing language occurs: "If you are not satisfied,
make me out a deed for the property there, and I will
to you what I got of you here. If you don't want the
place as it is, just let me know in ten days what you
will do; and if you still want to keep it, don't say any

more in the way of complaint, for you got the worth of the property here anyway I think." There are other letters in the record written by the plaintiff concerning the matter, and they all show that defendant and not the plaintiff was the one who was complaining about having been deceived. These letters, as well as the entire conduct of plaintiff, show that he was satisfied with the trade until about the time this suit was begun, and that, if he ever had a right to rescind for fraud, he had deprived himself of his remedy by acquiescence.

A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract: *Schiffer* v. *Dietz*, 83 N. Y. 300; *Parmlee* v. *Adolph*, 28 Ohio St. 10; *Williamson* v. *New Jersey S. R. R. Co.*, 29 N. J. Eq. 311; *Wicks* v. *Smith*, 21 Kan. 412 (30 Am. Rep. 433); *Marston* v. *Simpson*, 54 Cal. 189.

From the time of the conveyance in question the plaintiff had undisputed possession of the Lebanon property, leased and collected the rents thereof, endeavored to sell and dispose of it, and, in short, exercised full and complete ownership over it, without making any offer to rescind, although he admits that he discovered the alleged fraud within a short time after the trade was consummated, and long before this suit was begun. Under the circumstances of this case we think the decree of the court below was right, and must be affirmed.

AFFIRMED.