Argued October 17, 1930; affirmed March 17, 1931

# UNION SAVINGS & LOAN ASS'N *v.* GETTY ET AL.
## (296 P. 878)

*Harry G. Hoy*, of Portland (Lawrence T. Harris, of Eugene, and Edward O. Doxey, of Portland, on the brief), for appellants.

*J. K. King*, of Eugene (Potter & King, of Eugene, on the brief) for respondent.

BEAN, C. J. This is a suit for the strict foreclosure of a contract for the sale of certain residence property in Eugene, Oregon. The contract of sale provides that time is the essence of the contract. It was dated October 26, 1927, and provided for an initial cash payment of $375 and monthly payments of $37.50, beginning November 20, 1927, for a period of eighteen months, and thereafter in the amount of $47.50 each until the amount was fully paid. The purchase price was $6,000. The defendants were permitted by plaintiff to take possession of the premises some time in September, 1927, and they continued in possession approximately a month before the contract was signed, and thereafter until the first of June, 1929. On June 1, 1929, they abandoned the premises, moved away from Eugene to Portland, and made no payments on the contract subsequent to the payment due May 20, 1929. The suit was commenced August 7, 1929.

Plaintiff alleges default in making the payments and in failing to keep the premises insured, as provided by the contract, and that the payments made were no more than the rental value of the property. Defendants filed an amended answer and cross-complaint denying the alleged default on the contract and asking a rescission thereof and return of the money they paid and reimbursements for improvements made, and alleged that the contract had been procured by plaintiff through fraud and fraudulent concealment perpetrated by the plaintiff in that plaintiff concealed

the fact as to latent defects in the building. The defendants do not claim that there was any active fraud in the misrepresentations, but claimed that the premises were not of the value that they expected and that they were worth no more than $4,500. The plaintiff has its principal office in the city of Portland and the defendants had ample opportunity to examine the premises, and they occupied the same for about a month before the contract was made and were really in a better position to know the condition thereof than the plaintiff was.

The trial court found that no fraud had been practiced on defendants, that there had been no fraudulent representations or concealment and that the defendants entered into the contract fully advised and informed as to the condition of the premises they were purchasing. The court allowed defendants sixty days from the date of the decree within which to pay the delinquent instalments and other sums due on the contract and, in default thereof, it decreed that a strict foreclosure of the contract be entered.

It appears from the evidence that defendants were negotiating with plaintiff for the purchase of the property the latter part of June, 1927, and were given the keys to the house for the purpose of inspection, and in September, approximately a month before the contract was signed, defendants moved into the premises; that the defendants found some fault with the condition of the house at the time they moved in and were allowed $72.50 for the repair of the heating system in the house, which was credited on the first cash payment, and that before the contract was signed the plaintiff advised defendants that it would no longer be responsible for any repairs required on the premises. The defendants discovered the alleged defects

in the premises in the fall and winter of 1927, or early spring of 1928, but they continued in possession of the house and lot, continued making payments upon the contract thereafter and during the entire year of 1928 and continuously until May 20, 1929. In June they abandoned the property and apparently abandoned the contract and discontinued payments. Defendants did not make any claim against plaintiff or notify it of any defects in the property until July, 1929, when through their attorney they demanded of plaintiff $250 for a quitclaim deed from defendants. It is claimed on the part of defendants that as the contract provided that it should terminate upon a default that equity has no jurisdiction to foreclose the right of defendants and that there is no necessity therefor.

■ The simple fact that defendants demanded $250 for a quitclaim deed, and the further fact that in this case they claimed the right of rescission, shows clearly that plaintiff, in order to cancel the contract and be in a position to show its title clear in that respect, was required to foreclose the contract. Jurisdiction resides in a court of equity in suits under executory contracts to enforce the lien of a vendor and foreclose the rights of delinquent vendees: *Security Savings Co. v. Mackenzie*, 33 Or. 209, 214 (52 P. 1046); *Flanagan Estate v. Great Cent. Land Co.*, 45 Or. 335, 342-344 (77 P. 485); *Maffet v. Or. & Cal. R. Co.*, 46 Or. 443, 451, 452 (80 P. 489). In the Flanagan Estate case, speaking of equitable conversion taking place in the execution of an executory contract, this court said:

"The conversion spoken of entails equitable remedies, hence the vendor may invoke equitable cognizance by foreclosure to cut off or bar the vendee's interest, it being an equity of redemption, on the supposition that that is done which ought to be done."

The claim that a demurrer would lie for want of jurisdiction of a court of equity cannot be maintained. There was no error in overruling the demurrer to the complaint.

Defendants claim that they are entitled, under the evidence, to a rescission of the contract. The defendants, upon the trial, admitted that all the defects and shortcomings of the property of which they are complaining were discovered by them in the fall of 1927 or early spring of 1928, but they made no complaint, neither at the time nor in the future, until in July, 1929, and during the intervening time and up until June, 1929, they continued to live on the premises and to make monthly payments on the contract.

Rescission by a vendee of a contract of sale demands reasonable promptness in action on the part of such vendee, claiming to be defrauded or over-reached, and any unreasonable delay in asserting a disaffirmance of the contract would be considered as an election to treat it as continuing, or to affirm it: 2 Black on Rescission of Contracts, (2d Ed.) § 536, p. 1316; *Potter Realty Co. v. Breitling,* 79 Or. 293, 304, 305 (155 P. 179); *McCourt v. Johns,* 33 Or. 561, 569 (53 P. 601).

Any action on the part of the purchaser treating an executory contract as in force, when done with the knowledge of facts creating a right to rescind, amounts to a waiver of the right to rescind because of the existence of such facts: 39 Cyc. 1432; *James v. Ward,* 96 Or. 667, 676 (190 P. 1105); *Scott v. Walton,* 32 Or. 460, 464 (52 P. 180).

The representations made by plaintiff in regard to the house, of which complaint is made, were principally that the house was constructed at a low cost and that the defendants would obtain the benefit thereof,

that it was a good buy, which is practically trade talk and an expression of opinion which defendant F. C. Getty, who is a salesman, would be in as good a position to determine as was the plaintiff.

A vendee of real property who has had opportunity to visit the premises and judge of its cost and value where all the circumstances are plainly disclosed by the vendor, as far as his knowledge extends, cannot rescind his contract to purchase because of fraudulent misrepresentations in those respects: *Helgeson v. Northwestern Trust Co.,* 103 Or. 1, 6, 7 (203 P. 586). By reason of the lapse or delay of the defendants in making their claim for rescission and their action treating the contract of sale as in force, with knowledge of all the conditions of the premises and considering the opportunity that they had to examine the premises and determine their condition and value, defendants are precluded from rescinding the contract. The contract provided, in substance, that upon default in the payments by defendants the defendants should not be entitled to a return of any part of the payments or expenditures thereon.

The findings and decree of the trial court were correct.

The decree of the circuit court is affirmed.

BROWN, BELT and KELLY, JJ., concur.